1  Emily L. Maxwell (CA Bar No. 185646)
   maxwelle@howrey.com
2  Brett C. Jackson (CA Bar No. 239901)
   jacksonbrett@howrey.com
3  HOWREY LLP
   525 Market Street, Suite 3600
4  San Francisco, California 94105
   Telephone: (415) 848-4947
5  Facsimile: (415) 848-4999

6  Attorneys for Plaintiff
   Echo Film S.r.l.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  Echo Film S.r.l, | ) Case No. |
| 12        Plaintiff, | ) CV09-01455 JFW (AGRx) |
| 13        vs. | ) COMPLAINT FOR BREACH OF<br>) CONTRACT AND COPYRIGHT<br>) INFRINGEMENT |
| 14  DigiWorld Studios, Inc.,<br>Cinemavault.com Inc., Monarch Home | ) DEMAND FOR JURY TRIAL |
| 15  Video, Inc., Daniel Armas and Bob<br>Reynolds, | ) |
| 16 | ) |
| 17        Defendant. | ) |

18     NOW COMES Plaintiff, ECHO FILM S.r.l. ("Echo Film") for its Complaint
19
20  against Defendants DigiWorld Studios, Inc. ("DigiWorld"), Cinemavault.com Inc.,
21  ("Cinemavault"), Monarch Home Video, Inc. ("Monarch"), Daniel Armas ("Armas")
22  and Bob Reynolds ("Reynolds").
23     Based upon personal knowledge, information, and belief, and the investigation of
24  counsel, Plaintiff alleges as follows:

25
26
27
28

HOWREY LLP   COMPLAINT AND DEMAND FOR JURY TRIAL

DM_US:21940190_1

## NATURE OF THE ACTION

## PARTIES

1. Plaintiff Echo Film is an Italian corporation with its principal place of business in Rome, Italy. Echo Film is in the business of making movies.

2. Defendant DigiWorld is a corporation incorporated under the laws of the State of California with its principal place of business in Beverly Hills, California. DigiWorld is in the business of, *inter alia,* the purchase and distribution of motion pictures. Defendant is doing business in and may be found in this district.

3. Defendant Cinemavault is a corporation incorporated under the laws of the State of California with its principal place of business in Toronto, Ontario Canada. Cinemavault is in the business of acquiring and distributing motion pictures. Defendant is doing business in and may be found in this district.

4. Defendant Monarch is a corporation incorporated under the laws of the State of Tennessee with its principal place of business in Lavergne, Tennessee. Monarch is in the business of acquiring and distributing motion pictures. Defendant is doing business in and may be found in this district.

5. Defendant Armas is a citizen of the State of California. Armas is the Chief Executive Officer of DigiWorld.

6. Defendant Reynolds is a citizen of the state of New York. Mr. Reynolds is the Senior Vice President Business Affairs of DigiWorld.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338. The amount in controversy exceeds $75,000.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 1400(a) because Plaintiff's claims arose in this District, a substantial portion of the events and

omissions giving rise to these claims occurred in the District, and because at least some of the defendants reside in and/or have their principal places of business in this District.

## FACTUAL BACKGROUND

9. On or about September 15, 2006, defendant DigiWorld contracted to purchase for $3 million certain rights in regard to a small-budget, independent, English-language, Italian-made film called "The Listening" (hereafter the "Contract"). DigiWorld believed that the film had the potential to contend for an Academy Award for Best Foreign Film. However, after the film was not selected for the Oscar list, DigiWorld defaulted on its agreement to purchase the film. DigiWorld did not pay the $3 million it agreed to pay for the film. Nor did DigiWorld return the film, which had generated interest from companies other than DigiWorld. Instead, DigiWorld and defendants Armas, Reynolds, Cinemavault, and Monarch distributed the film in the United States and internationally. DigiWorld, Armas, and Reynolds also made unauthorized edits to the film, and falsely listed Armas and Reynolds as producers of the film. All of this was done without payment for the film.

10. The Listening is a film about the important and intriguing issue of classified global audio surveillance of private citizens. The film opened first in Italy and was well-received at international film festivals. The film had exciting prospects in a post-Patriot Act America and defendant DigiWorld wanted to capitalize on that potential.

11. Accordingly, on or about September 15, 2006, DigiWorld entered into the Contract with Ammo Films, Ltd. ("Ammo Films") to purchase the rights to the film. Ammo Films had previously acquired the rights in the film from Echo Film.

12. Pursuant to the Contract, the rights in the film were transferred on September 15, 2006. In consideration of that transfer of rights, DigiWorld agreed to pay Ammo Films $3 million ($3,000,000.00). The $3 million was due to be paid as soon as DigiWorld received the (1) MPAA Rating Certificate, (2) certification by labs, (3) guild association approvals, and (4) insurance bonding requirements, but was due by

December 31, 2006 at the very latest. If the payment was not made by December 31, 2006, then all rights in the film reverted to Ammo Films. DigiWorld was to pay in advance all shipping costs associated with the film.

13. The only conditions precedent to DigiWorld's obligation to pay for the film were (1) confirmation from a mutually agreed laboratory that the film prints were of acceptable commercial technical quality, (2) evidence of Ammo Film's title to the rights granted to DigiWorld under the Contract, and (3) MPAA certification of the film. Ammo Films was to provide the documents necessary to facilitate the due diligence into these items. Thereafter, DigiWorld was to use its best efforts to apply for all necessary insurance and permissions (including the MPAA rating) and to otherwise fulfill these conditions precedent. DigiWorld assumed responsibility for fulfilling these conditions precedent and, according to the Contract, DigiWorld has the burden to establish that it acted in good faith using best efforts to satisfy these conditions precedent.

14. According to the Contract, DigiWorld's failure to pay the $3 million when due is a material breach which DigiWorld had, at most, twenty (20) days to cure. DigiWorld did not make the payment of $3 million on time, nor did DigiWorld cure this breach despite numerous requests to do so. According to the Contract, this uncured material breach and Ammo Films' termination of the agreement caused all of the rights granted under the Contract to revert to Ammo Films "absolutely." Under those circumstances, the parties agreed as part of their Contract that if DigiWorld had negotiated any agreements to promote, market and/or distribute the movie, then DigiWorld would assign those agreements to Ammo Films.

15. DigiWorld has entered into multiple contracts for the promotion, marketing and/or distribution of the film. Despite requests to do so, DigiWorld has not assigned any of these agreements to Ammo Films as required by the Contract. Moreover, DigiWorld has refused to provide any information whatsoever regarding these agreements.

16. The Contract allowed DigiWorld to edit the movie, subject to the prior written approval of Ammo Films and the director of the film. However, DigiWorld made unauthorized edits to the film. DigiWorld removed scenes from the film, took a copy of the film which was digitally marked "Not For Commercial Use" and edited the film to remove that designation, changed the credits on the film, including using digital editing to add Defendants Armas and Reynolds as "producers" of the film, and also edited the audio of the film, including but not limited to the voiceover. DigiWorld also apparently made changes to the marketing materials associated with the film, including, for example, the text on the DVD box. Ammo Films and the director did not give their consent to any edits made by DigiWorld and its agents.

17. Cinemavault, via its website cinemavault.com, is advertising the film as part of its catalogue. On information and belief, Cinemavault is marketing, distributing and/or promoting the film in the United States and abroad. On information and belief, Cinemavault is doing this via its website cinemavault.com and is also doing this via in person solicitation at film festivals across the United States and the world, including but not limited to, at film festivals in California.

18. Monarch, via its website monarchhomevideo.com, is advertising the film as part of its catalogue. On information and belief, Monarch is marketing, distributing and/or promoting the film in the United States and abroad. On information and belief, Monarch is doing this via its website and is also doing this via in person solicitation at film festivals across the United States and the world, including but not limited to, at film festivals in California.

## ASSIGNMENT OF RIGHTS

19. On or about February 26, 2009, Ammo Films transferred and assigned to Echo Film all of its rights in any causes of action against Defendants for breach of contract, copyright infringement and/or any other claim relating to the film and/or arising out of the Contract.

-5-
COMPLAINT AND DEMAND FOR JURY TRIAL

# COUNT ONE
## Copyright Infringement Against All Defendants

20. Plaintiff incorporates and realleges each paragraph set forth above as if fully set forth herein.

21. In or about 2004, Giaccomo Martelli ("Martelli") authored a screenplay for a feature motion picture eventually entitled "The Listening" (originally titled "1994" or "MILLENOCENTONOVANTAQUATTRO") (hereinafter the "Screenplay"). By written instrument dated on or about July 27, 2004, Martelli assigned to Echo Film his entire right, interest and title in the copyright in the Screenplay and all drafts, versions and adaptations thereof. The Screenplay had been previously registered with the Italian copyright office.

22. From 2004-2006, Plaintiff Echo Film produced a feature motion picture entitled "The Listening" based on and incorporating substantial portions of the copyrighted material from the Screenplay, and in 2006 released such feature film.

23. In or about 2006, Echo Film registered the film with the Italian copyright office.

24. Plaintiff owns the copyrights in the film and the Screenplay and has protected those rights with the Italian copyright office. Pursuant to various treaties and conventions between the United States and Italy, as well as United States copyright law, Plaintiff now wishes to enforce its copyrights in this action.

25. In or about September 2006, Defendant DigiWorld Studios began reproducing, performing, marketing, and distributing the copyrighted material in the United States and abroad. This was initially done pursuant to the Contract grant of rights. However, pursuant to the Contract, DigiWorld lost the rights to the film on or about December 31, 2006 when it did not make payment as required under the Contract. After December 31, 2006, DigiWorld was not authorized to reproduce, perform, market

or distribute the film. However, DigiWorld has continued to do so notwithstanding repeated requests that it cease and desist.

26. Defendant Armas is personally liable for infringement due to, *inter alia*, his personal participation in the reproduction, performance, marketing, and distribution of the copyrighted material; his use of DigiWorld as an instrument to carry out his willful and deliberate infringement; the fact that he is a dominant influence in DigiWorld and determined the polices that resulted in infringement; and/or because he derived financial benefit from the infringing activities.

27. Defendant Reynolds is personally liable for infringement due to, *inter alia*, his personal participation in the reproduction, performance, marketing, and distribution of the copyrighted material; his use of DigiWorld as an instrument to carry out his willful and deliberate infringement; the fact that he is a dominant influence in DigiWorld and determined the polices that resulted in infringement; and/or because he derived financial benefit from the infringing activities.

28. In or about 2007, Defendant Cinemavault began promoting, distributing, and reproducing the copyrighted material. At no time has Plaintiff Echo Film authorized Cinemavault to promote, distribute, or reproduce the copyrighted work.

29. In or about 2007, Defendant Monarch began promoting, distributing, and reproducing the copyrighted material. At no time has Plaintiff Echo Film authorized Monarch to promote, distribute, or reproduce the copyrighted work.

30. Ammo Films did not authorize Cinemavault or Monarch to promote, distribute, or reproduce the copyrighted work.

31. Defendants DigiWorld, Armas, and Reynolds are also vicariously liable for infringement of the copyrighted work. DigiWorld, Armas, and Reynolds directly financially benefited from Cinemavault's and Monarch's infringement of the copyrighted work. Additionally, DigiWorld, Armas, and Reynolds each had the right

and ability to supervise Cinemavault's and Monarch's infringing activity, but instead authorized Cinemavault's and Monarch's infringement of the copyrighted work.

32. DigiWorld, Armas, and Reynolds are also liable for contributory infringement. DigiWorld, Armas, and Reynolds knew that after December 31, 2006 they were not authorized to reproduce, perform, market or distribute the copyrighted material. They also knew that Cinemavault and Monarch were not authorized to promote, distribute, and reproduce the film. However, with this knowledge, DigiWorld, Armas, and Reynolds induced, caused, and/or materially contributed to Cinemavault's and Monarch's infringing conduct.

33. Plaintiff has notified Defendants that they have infringed its copyright, but Defendants have refused to cease their acts of infringement.

34. By reason of Defendants' infringement and threatened infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to its ownership rights in the copyrighted work. Plaintiff is entitled to recover those damages from Defendants.

35. Further irreparable harm is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law. Plaintiff is entitled to an injunction restraining Defendants, their officers, directors, agents, employees, representatives, and all persons acting in concert with them from engaging in further such acts of copyright infringement.

### COUNT TWO
### Breach of Contract Against Defendant DigiWorld

36. Plaintiff incorporates and realleges each paragraph set forth above, as if fully set forth herein.

37. As set forth more fully above, the Contract required DigiWorld to pay $3 million to acquire certain rights to the movie "The Listening." That payment was to be made by no later than the date of receipt of the (1) MPAA Rating Certificate, (2)

-8-
COMPLAINT AND DEMAND FOR JURY TRIAL

certification by labs, (3) guild association approvals, and (4) insurance bonding requirements. In no event was that payment to be made later than December 31, 2006. If the payment was not made by December 31, 2006, then all rights in the movie automatically reverted to Ammo Films.

38. The only conditions precedent to DigiWorld's obligation to pay for the film were (1) confirmation from a mutually agreed laboratory that the film prints were of acceptable commercial technical quality, (2) evidence of Ammo Film's title to the rights granted to DigiWorld under the Contract, and (3) MPAA certification of the film. Ammo Films was to provide the documents necessary to facilitate the due diligence into these items. Thereafter, DigiWorld was to use its best efforts to apply for all necessary insurance and permissions (including the MPAA rating) and to otherwise fulfill these conditions precedent. DigiWorld assumed responsibility for fulfilling these conditions precedent and, according to the Contract, DigiWorld has the burden to establish that it acted in good faith using best efforts to satisfy these conditions precedent.

39. Ammo Films performed all conditions, covenants, and promises required on its part to be performed in accordance with the Contract and believes that all of the conditions precedent actually occurred. If any of these conditions precedent were not satisfied, it is because DigiWorld failed to act in good faith using its best efforts to satisfy the conditions precedent.

40. According to the Contract, DigiWorld's failure to pay the $3 million when due is a material breach which DigiWorld had, at most, twenty (20) days to cure. DigiWorld did not make the payment of $3 million on or before December 31, 2006 as required, nor did DigiWorld cure this breach despite numerous requests to do so. According to the Contract, this uncured material breach and the resulting termination of the agreement caused all of the rights granted under the Contract to revert to Ammo Films "absolutely." Under those circumstances, the parties agreed as part of their Contract that if DigiWorld had negotiated any agreements to promote, market and/or

1  distribute the movie then DigiWorld would assign those agreements to Ammo Films.
2  On information and belief, DigiWorld has entered into multiple contracts for the
3  promotion, marketing and/or distribution of the film. Despite requests to do so,
4  DigiWorld has not assigned any of these agreements to Ammo Films as required by the
5  Contract. Moreover, DigiWorld has refused to provide any information whatsoever
6  regarding these agreements to Ammo Films or Echo Film, again despite numerous
7  requests to do so.

8      41.   The Contract allowed DigiWorld to edit the movie subject to the prior
9  written approval of Ammo Films and the director of the film. DigiWorld made edits to
10 the film without authorization from Ammo Films and the director as required by the
11 Contract. DigiWorld removed scenes from the film, took a copy of the film which was
12 digitally marked "Not For Commercial Use" and edited the film to remove that
13 designation, and made changes to the audio of the film, including changes to the
14 voiceover. DigiWorld also changed the credits on the film, including using digital
15 editing to add Defendants Armas and Reynolds as "producers." This representation is
16 false. Armas and Reynolds did not act as producers on the film. Ammo Films and the
17 director did not give their consent to any of these edits.

18     42.   Ammo Films repeatedly requested that DigiWorld perform its obligations
19 under the Contract.

20     43.   DigiWorld breached the Contract by, among other things:
21         (a) Failing to pay the $3,000,000 as required by the Contract;
22         (b) Failing to use best efforts as required by the Contract;
23         (c) Failing to assign the rights to the agreements it negotiated for the
24 promotion, marketing and distribution of the film to Ammo Films after the reversion of
25 rights to Ammo Films occurred on January 1, 2007; and
26         (d) Editing the film without express written permission as required by the
27 Contract.
28

-10-
COMPLAINT AND DEMAND FOR JURY TRIAL

HOWREY LLP

DM_US:21940190_1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and seeks relief against Defendants as follows:

A. For a permanent injunction enjoying Defendants and all persons acting in concert with Defendants from manufacturing, reproducing, distributing, adapting, displaying, advertising, promoting, offering for sale, and/or selling, or performing any materials that are substantially similar to the copyrighted work, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendants' possession or control. This includes, but is not limited to, the return of any prints, copies, negatives or other representations of the film in Defendants' possession, custody or control.

B. For an order requiring Defendant DigiWorld to assign each of its agreements for the promotion, marketing and distribution of the film to Plaintiff Echo Films.

C. For actual damages and Defendants' profits in an amount in excess of $75,000 to be determined at trial, plus prejudgment interest.

D. For attorneys' fees and costs as allowed by the Contract and/or by any other rule or law.

E. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial of all issues triable by jury.

Dated: February 27, 2009

HOWREY LLP

By: _____
Emily L. Maxwell
Brett C. Jackson
Attorneys for Plaintiff
Echo Film S.r.l.

-12-
COMPLAINT AND DEMAND FOR JURY TRIAL